UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **JILL CADRE and THE CADRE LAW FIRM, LLC,**<br><br>                 **Plaintiffs,**<br><br>v.<br><br>**PROASSURANCE CASUALTY COMPANY,**<br><br>                 **Defendant.** | Civ. No. 16-0103 (KM) (JBC)<br><br>**OPINION** |

**MCNULTY, U.S.D.J.:**

    The plaintiffs, Jill Cadre and the Cadre Law Firm, LLC, brought this action seeking a declaration that they are entitled to insurance coverage under a professional liability policy issued by the defendant, ProAssurance Casualty Company ("ProAssurance"), for client funds misappropriated by a legal assistant who was employed by the firm. Cadre faces possible suspension from the practice of law by the Office of Attorney Ethics for the Supreme Court of New Jersey unless the funds are returned to the client trust account. The emergent complaint, order to show cause, and motion for summary judgment, were originally filed in the Superior Court of New Jersey, Law Division, Bergen County. Defendant removed the action to this Court on January 8, 2016. Now before the Court is the Plaintiffs' motion for summary judgment pursuant to Fed. R. Civ. P. 56. (Dkt. No. 7) For the reasons set forth below, the motion is denied.

**BACKGROUND**

    Jill Cadre is an attorney licensed to practice law in the state of New Jersey. (Plaintiffs' Statement of Undisputed Material Facts [Dkt. No. 7-1] ("Pl. SOF") ¶ 1) Cadre was admitted to practice in New Jersey in 2003. (Aff. of Jill Cadre in Support of Order to Show Cause and Summary Judgment, dated Jan.

1

27, 2016 [Dkt. No. 7-3] ("Cadre Aff.") ¶ 3) In 2009, Cadre established a limited liability company, known as The Cadre Law Firm, LLC, through which she has since practiced law. (*Id.*)

In 2009, Cadre hired Miguel Mayorga as a legal assistant. (*Id.* ¶ 4) In February of 2015, Cadre was informed by the Office of Attorney Ethics of the Supreme Court of New Jersey that the firm's attorney trust account was going to be audited. (*Id.* ¶ 5) In preparing for the audit, on May 26, 2015, Cadre discovered that Mr. Mayorga had embezzled funds from the attorney trust account. (*Id.* ¶ 6) Cadre reported the theft to the Bergen County Prosecutor's Office, but Mr. Mayorga fled to Ecuador. (*Id.* ¶ 7)

New Jersey requires that attorneys practicing as limited liability companies obtain professional liability insurance against claims arising out of the performance of professional services. *See* R. 1:21-1B(a)(4). On February 4, 2015, ProAssurance issued a professional liability insurance policy under Policy Number LP6008897 to The Cadre Law Firm, LLC ("the Policy"). (Pl. SOF ¶ 2) Although effective as of February 2, 2015, the Policy was retroactive to February 4, 2009. (Decl. of Karen Blohm, dated February 22, 2016 [Dkt. No. 8-2] Ex. A Declarations) Jill Cadre and her firm are the named insureds. (*Id.*) The Policy provides, in relevant part, that ProAssurance

> will pay on behalf of the Insured...all sums in excess of the Deductible amount...which the Insured shall become legally obligated to pay as damages because of any claim or claims...involving any act, error or omission in rendering or failing to render professional services by the Insured or by any person for whose acts, errors or omissions the Insured is legally responsible[.]

(*Id.* § 2.1.1)

On June 8, 2015, Cadre, through her counsel and the firm's insurance broker, All Point Insurance Agency, notified ProAssurance of the Mayorga embezzlement loss. (Cadre Aff. ¶ 8) In two letters dated July 1 and 13, 2015, ProAssurance responded to the notification of loss and disclaimed coverage for any allegedly misappropriated client funds. (*Id.* ¶¶ 9, 10) Although Cadre

attempted to appeal this determination, ProAssurance continued to maintain that the Policy did not provide coverage in this instance.

Cadre has been informed by the Office of Attorney Ethics that unless she can restore the funds to the attorney trust account, she will be suspended from the practice of law by the Supreme Court of New Jersey. (Cadre Aff. ¶ 23) Stating that she lacks the funds to reimburse the loss to the attorney trust account, Cadre filed this action seeking a declaration that she is covered for the lost monies under the Policy.

## JURISDICTION

This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332, as there is complete diversity between the parties and the amount in controversy exceeds $75,000.

## LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Kreschollek v. S. Stevedoring Co., 223 F.3d 202, 204 (3d Cir. 2000).

In determining whether there is a "dispute as to any material fact," In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party. See Boyle v. Cnty. of Allegheny Pa., 139 F.3d 386, 393 (3d Cir. 1998). The moving party bears the burden of establishing that no genuine issue of material fact remains. See Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof ... the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325.

Once the moving party has met that threshold burden, the non-moving party "must do more than simply show that there is some metaphysical doubt

as to material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party must present actual evidence that creates a genuine issue as to a material fact for trial. *Anderson*, 477 U.S. at 248; *see also* Fed. R. Civ. P. 56(c) (setting forth types of evidence on which nonmoving party must rely to support its assertion that genuine issues of material fact exist). "[U]nsupported allegations ... and pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990); *see also Gleason v. Norwest Mortg., Inc.*, 243 F.3d 130, 138 (3d Cir. 2001) ("A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial."). If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, ... there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992) (quoting *Celotex*, 477 U.S. at 322–23).

In determining whether a party is "entitled to judgment as a matter of law," in this diversity case I must apply State substantive law. *See generally Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S. Ct. 817 (1938). That requires me to determine how the State's highest court has decided, or predict how it would decide, the applicable legal issues. Of course, a decision on point by the New Jersey Supreme Court is best. *See Hunt v. U.S. Tobacco Co.*, 538 F.3d 217, 220-21 (3d Cir. 2008).

> But "in the absence of guidance from the state's highest court, [I] must look to decisions of state intermediate appellate courts, of federal courts interpreting that state's law, and of other state supreme courts that have addressed the issue," as well as to "analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would determine the issue at hand."

4

*Norfolk Southern Ry. Co. v. Basell USA Inc.*, 512 F.3d 86, 92 (3d Cir. 2008) (quoting *Koppers Co., Inc. v. Aetna Cas. & Sur. Co.*, 98 F.3d 1440, 1445 (3d Cir. 1996)); *see also West v. AT&T Co.*, 311 U.S. 223, 237 (1940); *McCabe v. Ernst & Young, LLP*, 494 F.3d 418, 424 (3d Cir. 2007).

**DISCUSSION**

New Jersey Rule of Court 1:21-1B(a)(4) requires that law firms formed as limited liability companies obtain malpractice insurance:

> The limited liability company shall obtain and maintain in good standing one or more policies of lawyers' professional liability insurance which shall insure the limited liability company against liability imposed upon it by law for damages resulting from any claim made against the limited liability company by its clients arising out of the performance of professional services by attorneys employed by the limited liability company in their capacities as attorneys.

R. 1:21-1B(a)(4).

Cadre argues that this Rule binds not just LLC law firms, but also the insurance companies that provide professional liability insurance to those firms. The Rule, according to Cadre, mandates certain minimum levels of insurance, and thus demarcates the scope of a professional liability insurance policy. A compliant policy, says Cadre, would cover all claims that could arise out of the provision of professional legal services. To the extent that the Policy does not provide sufficient professional liability coverage to meet Cadre's needs, then, the Policy would contravene the Rule and fail to comport with her reasonable expectations. She seeks to have the Policy declared void or reformed so as to provide coverage.

I find Cadre's interpretation of the Rule to be unsustainable. Nothing in the Court Rules professes to impose a mandate on insurance companies. The rules are titled "Rules Governing the Courts of the State of New Jersey." The particular rule at issue is under the heading "Practice of Law." I can find no indication that the Rule applies to anyone other than attorneys and firms engaged in the practice of law. The Rule governs attorneys, not insurance companies. It says nothing about how the business of insurance is to be run or

the scope of individual policies. Moreover, the rule requires an LLC to obtain "one or more policies" of malpractice insurance, implying that one policy alone might provide only a portion of the necessary coverage. It is for the firm to determine if it has sufficient coverage to meet the requirements of the rule.

Cadre relies on *First American Title Insurance Company v. Lawson*, 827 A.2d 230 (N.J. 2003). *Lawson,* like this case, involved a declaratory judgment action regarding the scope of a professional liability insurance policy and the basis for the claims against the firm arose from a partner's misappropriation of money from client funds for the firm's business needs. The similarities, however, end there. In *Lawson* the insurer sought rescission because an attorney, in applying for the policy, had made misrepresentations pertaining to an ongoing audit of the firm based on diversion of funds. The New Jersey Supreme Court held that the insurer was entitled to rescind, and voided the policy as to the firm and two wrong-doing partners. As to a third partner, innocent of any misrepresentation, the court denied rescission. The court made no determination, however, as to coverage of any particular claim. The court specifically stated that it "d[id] not suggest an opinion in respect of the scope of that coverage or any other issue as it might relate to the policy's existence insofar as [the innocent partner] is concerned." 827 A.2d at 241. And nothing in *Lawson* suggests that Rule 1:21-1B(a) dictates the contents of insurance policies, as opposed to requiring that legal LLCs obtain coverage.

I am not persuaded by Cadre's contention that Rule 1:21-1B(a)(4) imposes requirements on insurance carriers; rather, the rule quite clearly applies to law firms operating as limited liability companies, directing that those firms obtain sufficient malpractice insurance, whether in one policy or in multiple policies, to cover any claim arising out of the provision of professional services. If the Policy here did not cover every claim, then Cadre was required

to get more insurance. I decline, therefore, to find that the Policy is voidable for failing to comply with the requirements of the rule.[1]

I turn to an analysis of the Policy itself. Cadre has asserted in the alternative that the Policy fails to comport with her reasonable expectations that it would provide coverage for the misappropriation at issue.

It is axiomatic that the party seeking coverage bears the burden of bringing its claim within the basic terms of the insurance policy. *Hartford Accident & Indem. Co. v. Aetna Life & Casualty Ins. Co.*, 483 A.2d 402, 409 (N.J. 1984). However, it is the insurer that carries the burden of proving that the loss comes within a policy exclusion. *Burd v. Sussex Mut. Ins. Co.*, 267 A.2d 7, 15 (N.J. 1970).

New Jersey law provides that "an insurance policy should be interpreted according to its plain and ordinary meaning." *Voorhees v. Preferred Mut. Ins. Co.*, 607 A.2d 1255, 1260 (N.J. 1992). "In the absence of any ambiguity, courts should not write for the insured a better policy of insurance than the one purchased." *Gibson v. Callaghan*, 730 A.2d 1278, 1282 (N.J. 1999). Exclusions in the insurance policy should be narrowly construed. *Nav-Its, Inc. v. Selective Ins. Co. of America*, 869 A.2d 929, 934 (N.J. 2005) (citing *Princeton Ins. Co. v. Chunmuang*, 698 A.2d 9, 16 (N.J. 1997)). "Nevertheless, if the exclusion is specific, plain, clear, prominent, and not contrary to public policy, it will be enforced as written." *Id.* (citations and quotations omitted). When there is ambiguity in an insurance contract, courts interpret the contract to comport with the reasonable expectations of the insured, even if a close reading of the written text reveals a contrary meaning. *Id.*

---

[1] In light of the finding that Rule 1:21-1B(a)(4) does not impose a mandate on insurance carriers, I find Plaintiffs' argument that ProAssurance misled her as to the scope of coverage to be without merit. In support of her argument, Cadre quotes from ProAssurance's marketing material which states that ProAssurance seeks to provide insurance policies which will "help you meet your coverage needs." I do not read such advertising as a guarantee that any one particular professional liability policy issued by ProAssurance will provide coverage for any and all types of claims arising out of the provision of legal services. Rather, I read it as a statement that ProAssurance professional liability policies will provide certain types of coverage to, as the material says, *help* a firm obtain the coverage it needs.

It is, first and foremost, when the policy language is ambiguous that courts look to the reasonable expectations of the insured. This analysis may also be done when the meaning of the policy is clear, but only in exceptional circumstances. *Werner Indus. v. First State Ins. Co.*, 548 A.2d 188, 191 (N.J. 1988). An insured's reasonably expectations are determined according to an objective standard of reasonableness. *Sears Mortg. Corp. v. Rose*, 634 A.2d 74, 84 (N.J. 1993). "[O]rdinarily the company should be bound by the impression as to coverage which the average purchaser would gain from such inspection of the policy as he would be likely to make." *Id.* (quoting *Caldwell v. Aetna Casualty & Surety Co.*, 258 A.2d 900, 903 (N.J. Super. Ct. App. Div. 1969)).

I begin, then, with the words of the Policy. The Policy undertakes to reimburse amounts which "the Insured shall become legally obligated to pay as damages because of any claim or claims[.]" (Policy § 2.1.1) The word "claim" is defined by the Policy as "a demand or suit for damages received by the Insured." (*Id.* § 1)[2] "Damages" are then defined as

> monetary judgments, award or settlements, but does not include the return or restitution of legal fees, costs and expenses charged by the Insured, or any allegedly misappropriated client funds or interest thereon.

(*Id.*) "[M]isappropriated client funds," then, are expressly excluded from the definition of damages. *See, e.g., Robert W. Hayman, Inc. v. Acme Carriers, Inc.*, 696 A.2d 1125 (N.J. Super. Ct. App. Div. 1997) (exclusion for theft by employee unambiguously barred coverage for claim of negligent supervision by insured).

Cadre argues that this provision is ambiguous because it is not clear whether the (excluded) misappropriation must be attributable to the named

---

[2] ProAssurance argues that no claim has been asserted against Cadre, and thus, the Plaintiffs' action is premature. It is true that no legal suit has been instituted against Cadre. I am also unpersuaded by Cadre's contention that "claim" includes when an insured first discovers or finds out about circumstances that could lead to a claim. The Policy is clear that a claim is a demand or suit for damages, not the uncovering of facts that might lead to a potential, but as yet nonexistent, claim.

Insured, or if it may include misappropriation by an employee. This ambiguity, she argues, requires resort to the reasonable expectations doctrine.[3]

Even assuming that the doctrine comes into play, I reject Cadre's contention that that the Policy fails to live up to her reasonable expectations. Her reasonable expectations, she says, are based on the mandate of Rule 1:21-1B(a)(4). For the reasons discussed above, I hold that it would not be reasonable to interpret that Rule as a mandate binding insurers, as opposed to law firms. Furthermore, an objectively reasonably insured would examine the provisions of the Policy, read (for example) the carve-out for misappropriation of client funds, and conclude that the Policy did not in fact cover each and every potential claim arising out of the provision of legal services. At any rate, I cannot find that the proffered evidence poses no genuine issue and requires judgment in favor of Cadre.

Accordingly, I deny the Plaintiff's motion for summary judgment at this time. I direct the parties, in conference with the Magistrate Judge, to complete whatever discovery is necessary to poise the case for resolution.

## CONCLUSION

For the reasons set forth above, Plaintiffs' motion for summary judgment is denied. An appropriate order follows.

Dated: July 14, 2016

_____
HON. KEVIN MCNULTY, U.S.D.J.

---

[3] Acceptance of this argument might also bar summary judgment for Cadre by raising a separate issue of fact: whether Mayorga's criminal acts can be imputed to the firm. As to that, I express no opinion.